UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 4:18-cv-00285-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Federal Defendants' (collectively "United States") Motion for Protective Order. Dkt. 79. Plaintiff Shoshone-Bannock Tribes Of The Fort Hall Reservation (the "Tribes") have filed a competing Motion for Discovery. Dkt. 81.

Having reviewed the record and the briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court DENIES the Tribes Motion for Discovery and GRANTS the United States' Motion for Protective Order.

## II. BACKGROUND

### A. Factual Background

In 1868, the Tribes entered into a Treaty with the United States, promising to

"relinquish all title, claims, or rights in and to any portion of the territory of the United States, except such as is embraced within the limits [of the Treaty]." Dkt. 21, at 7. The Tribes also acquired split title to the Fort Hall Reservation land, in which the United States held legal title as Trustee promising no unauthorized person "shall ever be permitted to pass over, settle upon, or reside [on the Reservation]." Dkt. 21, at 8.

In 1878, Utah & Northern Railroad Company built a road and railway across the Reservation (North/South line) without permission. Then in 1881, the Utah & Northern Railroad Company proposed another railway crossing the Reservation from East to West and sought a right of way totaling 670 acres to complete the project. On July 18, 1881, Tribal members, a Utah & Northern Railroad Company representative, and the United States as Trustee for the benefit of the Tribes, executed an agreement, in which the Tribes agreed to let Utah & Northern Railroad purchase the East/West line right of way for $6,000.00. This agreement was ratified as the Act of 1882. The Act of 1882 gave Utah & Northern Railroad Company a right of way through the Reservation, which divested Tribal interests in the land.

In 1887, after further concern of unauthorized trespass on the Reservation, the Tribes and the United States (participating as Trustee), entered into another agreement with the Utah & Northern Railroad Company granting a north/south right of way for the Pocatello townsite. This agreement was ratified as the Act of 1888. The land subject to the Act of 1888 encompassed 1,840 acres, including 102 acres previously given under the Act of 1882. The Act of 1888 also granted the Railway Company a right of way for the construction of railway tracks and the surrounding grounds for station buildings, depots,

shops, etc. The purpose of the Act of 1888 was "for the surrender and relinquishment to the United States of a portion of the Fort Hall Reservation, [] for the purpose of a town-site, and for the grant of a right of way through said reservation to the Utah and Northern Railway Company." Dkt. 21, at 22. The Act of 1888 imposed reversion conditions, which state "all lands acquired by said railway company near its station at Pocatello for its use for station grounds, depot buildings, shops, tracks, side-tracks, turn-outs, yards, and for water purposes, as hereinbefore provided, shall, whenever used by said railway company, or its assigns, for other purposes, be forfeited and revert to the United States, and be subject to the other provisions of this act." Dkt. 21, at 26; Act of 1888, Art. III, Section 11. Thus, one of the Tribes overarching claims in this case is that they have a reversionary interest in right of way lands granted under the Act of 1888.

The Union Pacific Railroad Company ("UPR") is a successor and assignee of the Utah and Northern Railway Company, and the Oregon Short-Line Railroad Company. UPR has formally relinquished rights under the Act of 1882 and the Act of 1888 on various occasions. All relinquished lands, however, are not in possession of the Tribes. The Tribes argue that they have an enforceable right to these relinquished lands (held in trust by the United States) for the benefit of the Tribes. Additionally, the Tribes argue that they also have an enforceable right to other lands within the Act of 1882 and the Act of 1888 that have been sold or leased by UPR for non-railroad purposes.

On January 31, 2012, The United States Department of Interior, Bureau of Indian Affairs ("BIA"), Northwest Regional Office issued a written notice to UPR detailing particular uses it had undertaken that did not comply with the Act of 1882 or the Act of

MEMORANDUM DECISION AND ORDER - 3

1888 ("DOI Notice Letter"). The Tribes argue that it was not until after the DOI Notice Letter that they became "aware of the actual finding of encroachment, the actual reversion, and claims related thereto." Dkt. 21, at 35. The Tribes further argue that the United States has failed to address the right of way encroachments even after receipt of the DOI Notice Letter.

On September 12, 2007, the Tribes requested action by the BIA regarding the abandoned right of way lands, known as the Idaho Gem facility. October 1, 2008, the Superintendent of the BIA issued a Decision finding that the Act of 1888 granted a right of way with a reversionary interest in the Tribes. In April 2019, the BIA further explained, "when the lands cease to be used for railroad purposes, the railroad company forfeits its interest in the land." Dkt. 21, at 38. The United States participated in these administrative hearings in support of the Tribes reversionary interests. The United States now holds the lands, subject to the administrative proceedings, in trust for the benefit of the Tribes pursuant to the Act of 1888. Additionally, on April 11, 2012, the United States filed a Joint Stipulation of Settlement, referenced as the Salazar Settlement Agreement, which recognized that: "(1) the subject land is a right of way; (2) that wrongful use has occurred; (3) that the United States had a trust obligation in connection with the management of such land and UPR's conduct in relation to the subject land; and, (4) that the Tribes could maintain an action based on their reversionary interest." Dkt. 21, at 42. However, in the instant suit before the Court, the United States has taken a different position regarding the Tribes' reversionary interest.

On June 10, 2014, the Bureau of Land Management ("BLM") asserted control and

ownership over some of the subject lands. On December 14, 2016, the BLM issued a public Official Statement that it had received the lands by relinquishment and that the land may revert to sole ownership of the United States. Additionally, despite Tribal request, the United States has refused to record the subject lands in the Tribes' name. The Tribes reference various attempts to do so in the Amended Complaint, detailing requests to record the subject land, but the Tribes assert that the United States has failed to timely respond to the requests.

### B. Procedural Background

On February 8, 2002, the Tribes filed a lawsuit in Federal District Court for the District of Columbia against the Secretary of Interior and the Secretary of Treasury for the mismanagement of monetary and non-monetary trust resources. On May 16, 2012, the Tribes settled their pending tribal trust case for $60 million. Dkt. 77-1. In this settlement, the Tribes waived the right to sue the federal government for any harm or wrongdoing relating to the management of trust funds and non-monetary trust assets, that occurred before the entry of the settlement on May 16, 2012. *Shoshone-Bannock Tribes of the Fort Hall Reservation v. Salazar*, No. 1:02-cv-254-TFH (D.D.C. Apr. 11, 2012).

On June 26, 2018, the Tribes brought this action to "resolve unsettled rights to land that has been abandoned or relinquished" by UPR in Pocatello, Idaho. Dkt. 21, at 2. The Tribes argue that the United States, as trustee and fiduciary to the Tribes, had a statutory duty to protect the Tribes' interests in the land at issue.

The Tribes' Amended Complaint requests monetary damages, declaratory relief,

and for the United States to take action regarding the subject land.[1] Count I requests a declaratory judgment that the interest granted to UPR was an easement that automatically extinguished when UPR ceased to use the easement for railroad purposes. Dkt. 21, at 47. Counts II-VI assert that the Tribes are entitled to a decree quieting title to the land at issue, declaring that the United States holds the legal title of the land *in trust* for the benefit of the Tribes. *Id.* at 49–60. Count VII requests the court to issue a Writ of Mandamus "ordering the BLM or Department of Interior to transfer the parcels in question to the property inventory of the BIA, to hold in trust for the benefit," of the Tribes. *Id*. at 61. Count IX is a Breach of Trust claim against the BIA for violating its "trust obligation and fiduciary duty under 25 CFR Part 169 to bring and enforce trespass actions against unlawful occupants of Indian lands." *Id.* at 65. Count XVI is for the ejectment and restitution of property. This count relates to Defendants purported refusal to surrender possession of the "Parking Lot, Bus Depot, Credit Union, City Creek Trail Area, and A Strip of Land 3.27 Acres." *Id*. at 72.

On November 11, 2018, the United States filed a Motion to Dismiss the Amended Complaint. Dkt. 41. On March 12, 2019, the Tribes filed a Motion to Stay, pending resolution from the United States District Court for the District of Columbia regarding the scope of the 2012 Settlement. Dkt. 53. The Court granted the stay. Dkt. 59. On September 20, 2019, the D.C. District Court issued a decision finding that the 2012 Settlement unambiguously waived right of way claims against the United States for any actions taken

---

[1] The Amended Complaint also include various claims against UPR and the City of Pocatello.

prior to 2012. Dkt. 70-1. However, the D.C. District Court also held that "the Idaho District Court should determine whether the Tribes' claims are based on harms or violations that occurred *before* May 16, 2012." *Id.* (emphasis added).

The Tribes then voluntarily dismissed several claims against the United States. Dkt. 73. The United States also withdrew its prior Motion to Dismiss and renewed the Motion in response to the Tribes' remaining claims. Dkt. 77. The United States filed its renewed motion on November 3, 2020.

On November 2, 2020, the Tribes served the United States with roughly twenty pages of discovery requests, include 93 requests for admission, nine interrogatories, and nine requests for production. In response to these requests, the United States filed a Motion for Protective Order on November 20, 2020, asking that the Court order the discovery be withdrawn—or at the very least deemed served after any upcoming Rule 26(f) conference—and that ALL discovery be stayed until the Court rules on the motion to Dismiss. Dkt. 79.

The Tribes responded and filed a competing Motion for Discovery arguing that it needs some limited discovery at this stage to adequately respond to the United States' Motion to Dismiss.

As explained in their motion, the Tribes requests (in part):

[C]onfirmation from the Government about documents referenced by and relevant to the motion to dismiss; information about the nature of the pivotal 2012 DOI Notice where the Government admits that the Tribes own the subject land in trust, which impacts the Governments' arguments; information related to the jurisdictional issues raised by the motion; information about the nature of the Governments' ownership and possession of the subject land impacting the Governments' arguments; the timing and

nature of the change in the Government's positions and associated bearing on the harms and injuries in question; the Tribes' notice of the Government's possession and ownership of subject lands; information about related administrative and judicial proceedings involving the subject right of way involving the Government and Tribes that has collateral estoppel effect impacting arguments raised by the motion to dismiss; etc.

Dkt. 81-1. Briefing on the competing motions concluded and the matter is now ripe for adjudication. Because the Motions work in tandem, the Court's decision of one motion naturally affects the other. The Court begins with the Tribes' Motion for Discovery.

### III. LEGAL STANDARD

**A. Motion for Discovery**

"A party may *not* seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1) (emphasis added). In authorizing expedited discovery, a court must consider "good cause." *Wicklund v. Ada Cty.*, No. CV 09-673-S-CWD, 2010 WL 2428753, at *4 (D. Idaho June 11, 2010), aff'd, 431 F. App'x 614 (9th Cir. 2011) (cleaned up). Good cause occurs when the need for expedited discovery outweighs the prejudice to the opposing party and the limited discovery is relevant to the matters before the Court. *Id.* Additionally, the party requesting the discovery must demonstrate why it needs "immediate access to the requested discovery rather than postponing . . . production [until] the normal course of discovery." *Semitool, Inc. v. Toyko Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

In determining whether there is good cause to permit limited expedited discovery, the Court should consider the following factors as outlined in *Rovio Entm't Ltd. v. Royal*

*Plush Toys, Inc.*: (1) "whether a preliminary injunction is pending;" (2) "the purpose for requesting the expedited discovery;" (3) "the breadth of the discovery request;" "(4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012).

### B. Motion for Protective Order

"Pre-trial discovery is ordinarily accorded a broad and liberal treatment" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (cleaned up). "Under Rule 26, however, '[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(c)(1)). "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

### IV. ANALYSIS

#### A. Motion for Discovery

As noted, Courts may find good cause for limited expedited discovery when there is a pending preliminary injunction. *Hum. Rts. Watch v. Drug Enf't Admin.*, No. CV152573PSGJPRX, 2015 WL 13648069, at *2 (C.D. Cal. July 10, 2015). Here, the Tribes have not filed a Motion for Preliminary Injunction. Thus, the first factor weighs

against granting early discovery.

Second, the Court looks to the purpose of the discovery request. Importantly, the purpose of the request must not outweigh the burden of production to the responding party. *Melaleuca, Inc. v. Kot Nam Shan*, No. 4:18-CV-0036-DCN, 2018 WL 9988657, at *3 (D. Idaho Feb. 14, 2018). Here, the Tribes assert the purpose of their discovery is to help clarify the issues brought up in the Motion to Dismiss. The Tribes argue that, "[t]he pending motion to dismiss raises issues intertwined with aspects of the merits of the case." Dkt. 81. Additionally, the Tribes seek information regarding the Unites States, "change of position and facts that undermine its arguments in the pending motion." *Id.* The Tribes have only vaguely explained the purpose of the discovery requests, which relates to replying to the pending Motion to Dismiss. However, the Tribes never explain *why* they need the limited discovery to answer the Motion to Dismiss. In fact, the majority of the Tribes Motion for Discovery and Reply argues that the Court should intervene and require the scheduling of a Rule 26(f) conference. While the Court can tease out the purpose for limited expedited discovery, there is no clear showing of the necessity of the discovery at this stage. Additionally, the United States argument is well taken that engaging in this process now *could* be prejudicial because, were the Court to allow this expansive discovery, but then grant (either in whole or in part) the United States' Motion to Dismiss, the discovery would be rendered useless. In sum, the purpose factor weighs against granting the request.

Third, a proper expedited discovery request "should be 'narrowly tailored' so as to discover only the 'minimum amount of information needed' to achieve its stated purpose. *Hum. Rts. Watch*, No. CV152573PSGJPRX, 2015 WL 13648069, at *2 (*citing AF*

*Holdings LLC v. Doe*, No. 2:11-CV-03076 LKK, 2012 WL 974933, at *4 (E.D. Cal. Mar. 21, 2012)). Here, the Tribes argue that the point of limited discovery is to reveal what position the United States is taking regarding the ownership of the lands at issue and that its request are sufficiently tailored to that goal. The Court disagrees.

The Tribes requested 93 Requests for Admission, nine Interrogatories, and nine Requests for Production. Dkt. 81-2.

The 93 Requests for Admission include a wide range of assertions, including admissions of ownership of various buildings and areas of land after 2012, admissions regarding certain documents—such as the Settlement Agreement, the 1882 Act, and the 1888 Act—and "the affirmative litigation memorandum(a) from the Solicitor for the Portland Area Office of the BIA." *See generally id.*

The Tribes Interrogatories are equally broad. One request in particular asks the United States to "identify when the United States changed its position regarding the ownership of the reversionary interest from the position stated in the January 31, 2012 DOI Right of Way Notice Letter." *Id.* at 22. This appears to be one of the main purposes of the Tribes' discovery requests. The remaining Interrogatories and Requests for Production seek confirmation of ownerships interests in various areas of land and buildings, as well as copies of deeds, titles, or other documentation evidencing ownership. Considering the broad range of the requests—not to mention the sheer volume—the Court cannot find that the Tribes' discovery requests are narrowly tailored to provide only the minimum amount of information needed. Additionally, the Tribes have made no effort to limit the scope of the requests. Thus, this factor weighs also against granting limited early discovery.

Fourth, the burden to the opposing party is overcome when "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc*, 208 F.R.D. at 276. Here, the Tribes have not shown the necessity of the expedited discovery. Further, the Tribes merely assert the United States "suffers no prejudice in being required to comply with Rule 26(f)'s requirement to participate in a discovery conference nor does it suffer prejudice in responding to discovery." Dkt. 85. Again, the Tribes press for a Rule 26(f) conference instead of indicating specific information needed in order to respond to the United States' Motion to Dismiss. This is putting the proverbial cart before the horse. Additionally, requiring the United States to respond to the 111 discovery requests is not only burdensome, but would extend the Motion to Dismiss briefing even further. Moreover, as noted, if the Motion to Dismiss were granted, all of the work in responding to the 111 discovery requests would be for nothing.

Fifth and finally, a party seeking discovery in the pleading stages should not do so too far in advance of the formal discovery process. *Hum. Rts. Watch*, No. CV152573PSGJPRX, 2015 WL 13648069, at *2. This case was filed in June 26, 2018. However, the case was stayed on May, 29, 2019, for sixteen months until the D.C. District Court resolved the scope of the 2012 Settlement. Thus, the pleading stage has been in motion for almost three years. That said, discovery in this case is on the horizon. Once the Court rules on the pending Motion to Dismiss discovery will commence. So while the Tribes request is not overly premature from a timing standpoint, it is in light of the pending legal matters that must be addressed.

Overall, the analysis of the factors outlined by *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, weigh against granting limited expedited discovery.

The Tribes argue that the party opposing discovery bears a heavy burden of showing why discovery should be denied, citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). This is true during the discovery stage of litigation. However, during the pleadings stage, discovery is only appropriate if there are factual issues raised by a rule 12(b) motion. *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987). Here, during the Motion to Dismiss, all of the facts alleged by the Tribes will be accepted as true and construed in their favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009). What's more, pursuant to Ninth Circuit precedent, if the Court dismisses any claim/s in this case, it will do so without prejudice and with leave to amend. *See Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir. 2009) (finding that dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment).

The usual course of litigation will be followed in this case. The Court will first address the legal arguments in the Motion to Dismiss to ascertain which claims may proceed. *Then* discovery can begin.[2] Finally, if the Court dismisses any particular claim and then, in subsequent discovery, the Tribes gain sufficient facts and evidence to revive

---

[2] Occasionally when the Court dismisses certain claims with leave to amend, this very issue arises. The Plaintiff often want to engage in early discovery (during the leave to amend period) in an effort to save their dismissed claims. Defendants, however, typically want to press forward with discovery *on only* the current claims. The Court will address this quandary if it becomes necessary. However, the Court notes that is has sometimes allowed limited discovery on dismissed claims concurrent with discovery on active claims if the circumstances warranted such. Thus, this issue may arise again; however, the case will likely be in a procedurally different posture than it currently is and a different analysis may apply.

MEMORANDUM DECISION AND ORDER - 13

that claim, it is within their power to file a motion for leave to amend.

In sum, the Tribes have not sufficiently explained why their need for limited discovery at the pleading stage outweighs the prejudice to the United States. Additionally, the Tribes have not identified factual issues raised by the Motion to Dismiss that warrant early discovery. Because the Tribes have failed to establish good cause sufficient to show that early discovery is necessary to resolve factual issues raised by the Motion to Dismiss, expedited discovery is not warranted.

Accordingly, the Court DENIES the Tribes' Motion.

**B. Motion for Protective Order**

In light of the Court's denial of the Tribes' Motion for Discovery, the Government's Motion for Protective Order will be granted. The Court will not delve substantively into the elements of a protective order as most are simply the antithesis of the elements necessary for discovery. The Court simply reiterates that, as the Ninth Circuit has held: discovery during the pleadings stage is only appropriate to resolve factual disputes raised by a Rule 12(b) motion, and additionally, that a pending Motion to Dismiss is sufficient to grant a protective order. *Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife*, 288 F.R.D. 500, 502–03 (D. Nev. 2013) (cleaned up). Because the Tribes have not shown that early discovery is warranted to resolve factual disputes regarding the pending Motion to Dismiss, the Court finds that granting the United States' Motion for Protective Order is proper.

Separately, in anticipation of their responsive filing, the Tribes filed a Motion for Leave to File Excess Pages. Dkt. 84. The Motion is unopposed. Good cause appearing, the

same is hereby GRANTED. The Tribes may file a responsive brief up to 35 pages in length. Furthermore, it is the Court's standard practice to allow the filing party roughly half as many pages in reply as their original motion (and as any response). Accordingly, the United States may file a reply brief of up to 17 pages.

!

## V. ORDER

**IT IS ORDERED:**

1. The Tribes' Motion for Discovery (Dkt. 81) is DENIED.

2. The United States Motion for Protective Order (Dkt. 79) is GRANTED. The Court will hold in abeyance the Tribes' discovery request until after it rules on the pending Motion to Dismiss and after the parties have held a Rule 26(f) conference.

3. The Tribes' Motion for Excess Pages (Dkt. 84) is GRANTED.

4. The Tribes' Response to the United States' Motion to Dismiss shall be due on or before 14 days from the date of this order. The United States' reply shall be due on or before 14 days after the Tribe's response is filed.

DATED: May 13, 2021

_____
David C. Nye
Chief U.S. District Court Judge