UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE BANNOCK TRIBES OF THE FORT HALL RESERVATION, | Case No. 4:18-cv-00285-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| UNITED STATES OF AMERICA; et al., | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court is the Government's Renewed Motion to Dismiss the Amended Complaint (the "Motion"). Dkt. 77. Defendant City of Pocatello partially joined the Motion as it pertains to Count V of the Amended Complaint. Dkt. 78. On September 28, 2021, the Court held a hearing and took the Motion under advisement. For the reasons outlined below, the Court finds good cause to GRANT IN PART and DENY IN PART the Motion.

## II. BACKGROUND

This case has a lengthy factual history. In short, it concerns land in Pocatello, Idaho, that 1882 and 1888 treaties between the United States and Shoshone-Bannock Tribes (the "Tribes") created conditional right of ways for railroad use. The treaties were ratified by congressional acts—the 1882 Act and 1888 Act. According to the Tribes, these Acts left

the Tribes a reversionary interest so that they would regain the land if it was no longer used for the railroad.[1]

The land is no longer used for the railroad, so the Tribes would like to see that land returned to them. What complicates this equation is a 2012 settlement agreement (the "Settlement") between the Tribes and the Government. The relevant waiver provision in the Settlement outlines:

> In consideration of the payment . . . , Plaintiff hereby waives, releases, and covenants not to sue in any administrative or judicial forum on any and all claims, causes of action, obligations, and/or liabilities of any kind or nature whatsoever, known or unknown, regardless of legal theory, for any damages or any equitable or specific relief, that are based on harms or violations occurring before the date of this Court's entry of this Joint Stipulation of Settlement as an Order and that relate to Defendants' management or accounting of Plaintiff's trust funds or Plaintiff's non-monetary trust assets or resources.

Dkt. 77-3, at ¶ 4. The Tribes are the Plaintiff in the Settlement Agreement and the Government is the Defendants.

The Settlement was entered into on May 16, 2012, and the overarching question before the Court in this suit is whether the injuries alleged by the Tribes arose before or after that date.

Prior to this Motion, the Tribes moved for clarification of the Settlement in the D.C. District Court.[2] That court held that the Settlement unambiguously waived the Tribe's

---

[1] The Government believes it unnecessary for the Court to make any legal conclusions about whether the 1882 and 1888 Acts created reversionary interests. Dkt. 77-1, at 7. For purposes of resolving this Motion, the Court assumes, but does not hold, that the Tribes had a reversionary interest in these parcels.

[2] The Settlement specifically provides that the D.C. District Court has jurisdiction to interpret and enforce the Settlement.

right-of-way claims arising before May 16, 2012, against the United States. *Shoshone-Bannock Tribes of Fort Hall Reservation v. Bernhard*, 486 F. Supp. 3d 61, 66 (D.D.C. 2020).  But it left to this Court to determine whether the Tribes' claims are based on harms occurring before that date. *Id.* at 67.

The Government argues that the harms occurred before the Settlement, and the Tribes argue that they occurred after the Settlement. In addition, the Government makes alternative arguments for many of the claims to be dismissed even if the Court finds that the harms occurred after the Settlement.[3]

After the D.C. District Court decision, the Tribes voluntarily dismissed some of their claims.[4] Dkt. 73. Additionally, some of the claims the Tribes brought are not against the Government and so are not addressed in the Government's Motion.[5] *See* Dkt. 77-1, at 11. At issue here then are Counts I–VII, IX, and XVI. Count I is a claim for declaratory judgment. Counts II–VI are Quiet Title Act claims regarding the five parcels of land in question—the Parking Lot, the Bus Depot, the Credit Union, the City Creek Trail, and the 3.27 Acres, respectively. Pocatello joins the Government's Motion as to Count V, which regards the City Creek Trail. Count VII is a claim for a writ of mandamus. Count IX is a breach of trust claim brought under the APA. And finally, Count XVI is a claim for ejectment. The Government moves to dismiss these counts under Rules 12(b)(1) and 12(b)(6).

---

[3] The Government presents alternative arguments in favor of dismissing claims I, V, VI, VII, IX, and XVI.

[4] These are claims VIII and X-XIII.

[5] These are claims XIV, XV, and XVII.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. See *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . . .").

If the jurisdictional attack is facial, the challenger asserts that the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering this type of jurisdictional attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.*

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the

MEMORANDUM DECISION AND ORDER - 4

plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (cleaned up). "This is not an onerous burden." *Johnson*, 534 F.3d at 1122.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682 (2009) (cleaned up).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id.* at 678. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it

is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. ANALYSIS

The Court first reviews the Government's argument that the Settlement waives all of the Tribes' claims. Then the Court will address the Government's alternative arguments for why it believes Counts I, V, VI, VII, IX, and XVI should be dismissed.

### A. Applicability of the Settlement

The Government argues that the Settlement waived all of the Tribes' claims, and for that reason, this case should be dismissed outright. In support, the Government points to the D.C. District Court's decision on the motion to clarify the Settlement.

#### 1. Collateral Estoppel

The Government's first argument is that the D.C. District Court decision bars the Tribes from bringing these claims.

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (quoting *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). "For the doctrine to apply: (1) the issue must be identical to the one alleged in prior litigation; (2) the issue must have been 'actually litigated' in the prior litigation; and (3) the determination of the issue in the prior litigation must have been 'critical and necessary' to the judgment." *Id.* (quoting *Clark*, 966 F.2d at 1320).

The Government contends that "[t]he applicability of the 2012 Settlement to the

MEMORANDUM DECISION AND ORDER - 6

Tribes' rights of way claims against the United States was precisely the issue litigated and decided by the D.C. District Court." Dkt. 77-1, at 17. However, that court expressly refused to take up the issue of whether the alleged harms occurred before or after May 16, 2012. *Shoshone-Bannock Tribes of Fort Hall Reservation v. Bernhard*, 486 F. Supp. 3d 61, 67–68 (D.D.C. 2020). It noted that "[t]he Idaho district court is better suited to resolve these issues in context, and can do so while adjudicating the United States's other bases for its motion to dismiss." *Id.* at 68. The issue resolved by that court was whether the Settlement waived right-of-way claims arising before the Settlement date *generally*, not whether the claims *actually* were waived. *Id.* at 65–68.

Because the issue of whether the injuries occurred before or after the Settlement is not identical to the issue before the D.C. District Court regarding whether injuries before the Settlement were waived, collateral estoppel does not bar the Tribes from bringing these claims. However, the D.C. District Court opinion did foreclose any argument from the Tribes that these claims are not the type covered by the Settlement.

### 2.  *Whether the Alleged Injuries Occurred Before or After the Settlement*

The non-railroad use of the lands in question undisputedly happened before the Settlement. But the Tribes see a new injury after the Settlement asserting the land remained in trust after the Settlement and yet the Government has since claimed an ownership interest adverse to the Tribes' interest. This argument rests on the proposition that the Settlement did not divest the land from the Tribes.

Underlying the Tribes' theory of their case is the principle recently reemphasized by the Supreme Court in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), that only Congress

can diminish tribal lands. *McGirt* was one reason the D.C. District Court gave for declining to resolve the timing issue now before this Court. *Bernhard*, 486 F. Supp. 3d 61, at 68. Citing *McGirt*, the D.C. District Court said, "given the Tribes claims relate to the boundaries of their reservation, it would be imprudent for the court to rule without a full understanding of the land interests created through the relevant treaties and congressional acts." *Id.* The D.C. District Court explained that this Court would have to "determine when reversionary interests arise and are extinguished" and that to do so "may also require resolving factual disputes through evidentiary proceedings." *Id.*

Central to this case are factual disputes about the interests in these parcels—who owns them and when did the interests arise. Throughout their briefs and at the hearing, the Government has not answered the question of whether three of the parcels—the Parking Lot, the Bus Depot, and the Credit Union—are or are not currently trust assets held for the benefit of the Tribes. *See* Dkt. 100, at 69. And even with respect to the two other parcels— the City Creek Trail and the 3.27 Acres—the relevant timeline and present interest owners are disputed.

Before the Court can determine whether the Settlement waived these claims, it must first determine if the Government is holding the land in trust for the Tribes and, if not, when the land was divested. If divestment happened before the Settlement, then the Settlement would apply. But if it happened after the Settlement, then these claims are alive. At this juncture, the facts are inadequate for the Court to resolve this issue. For this reason, the Court will not dismiss the claims based on the waiver argument and will allow discovery to go forward.

Because the Court rejects the Government's argument about waiver, the Court proceeds below to analyze the alternative arguments as to the individual claims. The Court notes that the Government raises no other challenges to the Quiet Title Act claims regarding the Parking Lot, the Bus Depot, and the Credit Union (Counts II–IV), so the Court DENIES the Motion as to those claims.

## B. Declaratory Judgment—Count I

Count I is a claim for declaratory judgement that the Tribes own and have a present possessory interest in the land. Dkt. 21, at ¶ 310.

The Government argues that there is no cause of action here because even though there is a Declaratory Judgment Act, "[d]eclaratory judgment is a remedy, not a cause of action or a basis for jurisdiction." Dkt. 77-1, at 37.

While the Tribes concede that the Declaratory Judgement Act does not give jurisdiction, they assert that they already have a basis for jurisdiction. Furthermore, they argue that this Court and others have regularly allowed separate causes of action to be brought under the Declaratory Judgement Act. Responding to the Government's argument about this cause of action being duplicative, the Tribes point to Federal Rule of Civil Procedure 57, which provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

The Declaratory Judgment Act creates an additional remedy where the court already has jurisdiction. *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954). It provides that "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading may declare the rights and

MEMORANDUM DECISION AND ORDER - 9

other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

"This statute does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity*, 771 F.3d 632, 635 (9th Cir. 2014). However, it can be pled as a cause of action. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989) ("To establish that a particular declaratory action presents an actual case or controversy, a party is required to show that, under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief."). Indeed, this Court has denied motions to dismiss claims for declaratory relief brought as a cause of action under the Act. *Seaman v. Empire Airlines, Inc.*, 2017 WL 1731686, at *4–5 (D. Idaho May 3, 2017); *Burch-Lucich v. Lucich*, 2013 WL 5876317, at *3 (D. Idaho October 31, 2013).

However, the Declaratory Judgment Act does not waive sovereign immunity. *Burns Ranches, Inc. v. U.S. Department of the Interior*, 851 F. Supp. 2d 1267, 1271 (D. Or. 2011). The Declaratory Judgment Act "merely grants an additional remedy in cases where jurisdiction already exists in the court." *Brownell*, 211 F.2d at 128. Therefore, "plaintiff[s] must look to the statute giving rise to the cause of action for such a waiver." *B.R. MacKay & Sons, Inc. v. United States*, 633 F. Supp. 1290, 1295 (D. Utah 1986). Thus, where there

is no waiver of sovereign immunity, declaratory judgment cannot be a remedy. However, where there is already a waiver of sovereign immunity, the Declaratory Judgment Act grants an additional remedy.

To the extent that sovereign immunity is waived in the underlying causes of action, the Court DENIES the Motion as to Count I.

## C. Statute of Limitations—Counts V and VI

The Government argues that the statute of limitations bars two of the Tribes' Quiet Title Act claims—those regarding the City Creek Trail (Count V) and the 3.27 Acres (Count VI).

The Quiet Title Act waives sovereign immunity but limits the waiver to claims "commenced within twelve years of the date upon which [the claim] accrued." 28 U.S.C. § 2409a(g). Accrual occurs "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id. Should have known* is a reasonability standard. *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989). "The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land." *Id.*

### 1. Preliminary Matters: Jurisdictional Issue and Evidence Outside of the Pleadings

As a preliminary matter, the parties' arguments on this topic rely on evidence outside of the pleadings. Whether the arguments can rely on evidence outside the pleadings depends on whether this is a jurisdictional issue or a nonjurisdictional issue. *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947) ("In passing on a motion to dismiss because the complaint

fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence . . . may not be considered. . . . But when a question of the District Court's jurisdiction is raised . . . , the court may inquire by affidavits or otherwise, into the facts as they exist."). Of course, the parties disagree about whether the statute of limitations question is jurisdictional or not.

The Supreme Court has treated the statute of limitations for the Quiet Title Act as jurisdictional. *Block v. North Dakota*, 461 U.S. 273, 292 (1983). Since then, the Supreme Court has said that "most time bars are nonjurisdictional." *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015). The Tribes rely on *Kwai Fun Wong*. But that case did not overrule *Block*. *Wilkins v. United States*, 13 F.4th 791, 795 (9th Cir. 2021). "Because we must follow the Supreme Court precedent that directly controls, leaving to the Court the prerogative of overruling its own prior decisions, we are still bound by the conclusion in *Block*—as interpreted by many Ninth Circuit decisions—that the QTA's statute of limitations is jurisdictional." *Id.* (cleaned up). Therefore, the statute of limitations question is jurisdictional. As such, the Court may consider evidence outside the pleadings in determining whether the statute of limitations has expired. Furthermore, the statute of limitations challenge is properly brought under Rule 12(b)(1) because it is a jurisdictional question.

### 2. *Whether Only Congress Could Give Notice*

The Tribes argue that since only Congress can divest the land from the Tribes, only congressional action could give the Tribes sufficient notice that the Government had an adverse claim on the land. Anything short of congressional action, such as an action by an

agency or executive official, would not qualify as notice that the Government had a real adverse claim.

On the other hand, the Government emphasizes that the Government's adverse claim did not need to be legitimate to give notice. In the ordinary Quiet Title Act case, "the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (cleaned up). The notice question "does not require the [Government's adverse claim] to be correct—it only requires the Court to determine when a reasonable person would have understood" that the Government believed it had a claim. *Wilkins*, 13 F.4th at 796.

Thus, the question before the Court is whether the statute of limitations and notice applies differently when a *tribe* brings a claim under the Quiet Title Act. Other Courts have ruled against tribes on the notice question—even where there was not congressional action diminishing the land. *E.g.*, *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 738–39 (8th Cir. 2001); *Navajo Tribes of Indians v. New Mexico*, 809 F.2d 1455, 1469 (10th Cir. 1987). In *Spirit Lake Tribe*, the Eight Circuit treated the Tribe as any other landowner regarding the notice issue. *See Spirit Lake Tribe*, 252 F.3d at 738–39 ("As a matter of law, a quitclaim deed disgorging title to the United States places a landowner on notice and triggers the QTA statute of limitations."). And the Tenth Circuit rejected the argument that tribes losing title claims to the statute of limitations is "backhanded" diminishment by explaining that "[t]his view blurs the critical distinction between being unilaterally deprived of title without being given any opportunity to litigate it and being foreclosed from litigating that

title because of sleeping on one's claim." *Navajo Tribes of Indians*, 809 F.2d at 1469.

This Court finds the reasoning of the Eighth and Tenth Circuits persuasive. The statute of limitations does not take title from the Tribes but rather forecloses litigating that title. Therefore, notice of the Government's adverse claims does not depend on there being congressional action.

### 3. The Tribes' Evidence of No Notice

Alternatively, the Tribes argue that the Government did not give them notice through any actions. At the outset of this issue, it is helpful to review the applicable legal standard. When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . . ."). A factual attack, often referred to as a "speaking motion," challenges the truth of the allegations in the complaint that give rise to federal jurisdiction; the court does not presume those factual allegations to be true. *Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269, 270 (9th Cir. 2009); *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). [1]

"[W]hen ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment," *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (cleaned up), and the court may consider evidence such as declarations or

testimony to resolve factual disputes, *id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Just as a nonmoving party must do under Rule 56(e), the nonmoving party must "set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." *Trentacosta*, 813 F.2d at 1159.

ǃ Here, the Government is bringing a factual attack by presenting extrinsic evidence to dispute the Tribe's allegation that it was not until 2014 that the Tribes became aware the United States Bureau of Land Management ("BLM") was managing the land. *See* Dkt. 21, ¶¶ 282–85 (alleging that it was not until at least 2014 that the Tribes became aware that the United States had taken a position adverse to the Tribes); *see also* Dkt. 77-1, at 27 (the Government presenting extrinsic evidence that contradicted the timing of notice).

The Government contends the Tribes had notice that the City Creek parcel was no longer used for railroad purposes and was not regarded as trust land by the United States as of 1993 and then again in 2004 when the Tribes received an answer to their FOIA request. Dkt. 77-1, at 25–26; Dkt. 77-7, at 3–7 (copy of right-of-way grant from BLM to City of Pocatello for a nature trail, dated March 26, 1993); Dkt. 77-7, at 10–17 (environmental assessment discussing the plans for the nature trail over the relinquished railroad right-of-way); *id.* at 18–20 (newspaper article dated June 21, 1992, discussing the plans for the trail); *id.* at 22–26 (the 2004 FOIA response). A memo included in the FOIA answer said that the land appeared to have reverted to the United States but that "ownership of the lands in question (Indians v. U.S.) is not 100 percent clear." *Id.* at 30. In the Government's view, this was enough to alert the Tribes that the Government had an adverse claim.

As for the 3.27 Acres parcel, the Government says this has been out of railroad use since 1964. The same 2004 FOIA request gave the Tribes the BLM's 1965 acceptance of the railroad's relinquishment. Dkt. 77-7, at 37.

Additionally, the Government notes that after the railroads relinquished these parcels, the BLM was the agency managing the land rather than the Bureau of Indian Affairs ("BIA"), which is the agency with regulatory authority over lands held in trust for tribes. That distinction should have been another signal to the Tribes that the Government did not consider this trust land.

For their part, the Tribes argue that they did not have notice, pointing first to a 2008 administrative agency decision that said, "the site will revert back to the United States (Bureau of Indian Affairs) to be held in trust for the Shoshone-Bannock Tribes."[6] Dkt. 22-17, at 1–3. However, this is in reference to a different parcel of land not at issue in this case. *Id.* at 3.

The Tribes next point to a 2012 Department of Interior Notice Letter, which notified the railroad company of the reversion "to the United States in trust for the Shoshone-Bannock Tribes." Dkt. 22-11, at 9–12. However, the Notice Letter only applies to the Parking Lot, Bus Depot, and Credit Union—not the City Creek Trail or the 3.27 Acres. *Id.*; *see also* Dkt. 21, at ¶ 229 ("The DOI Notice Letter identified the Bus Depot Building, the Parking Lot, and the Credit Union building as particular non-complying uses.").

---

[6] The Tribes also reference a 1960 memorandum (Dkt. 22-12, at 2), a 1973 memorandum (Dkt. 22-12, at 12–16), and a 2005 letter (Dkt. 22-6, at 8–14). However, each of these documents predate 2006, which is the cutoff for the 12-year statute of limitations.

The Tribes then point to a 2016 statement from the BLM that says the BLM did not receive the lands by relinquishment until 2014. Dkt. 22-18, at 2. This statement, however, relates only to the City Creek area. *Id.* Moreover, the 2014 acceptance of relinquishment was merely a correction of the 1989 relinquishment, which gave up more than what the railroad intended. Dkt. 77-7, at 32 (the 2014 Acceptance of Relinquishment); Dkt. 91, at 17 n.65. This error though does not change that the piece of the land at issue—the piece not used by the railroad—was relinquished in 1989. *See* Dkt. 77-7, at 32.

In sum, the Tribes have not met their burden of presenting evidence that a genuine issue of material fact exists as to when they received notice that the Government had an adverse claim regarding the City Creek parcel and the 3.27 Acres. The evidence presented shows that a reasonable person would have had notice no later than 2004, upon receipt of the FOIA response, that the Government had adverse claims.

### 4. Whether the Jurisdictional Questions and Merits Are Intermeshed

The Tribes' final argument on the statute of limitations question is that it is intertwined with the merits in a way that makes it improper for the Court to resolve the jurisdictional issue before resolving the merits.

"In general, a district court is permitted to resolve disputed factual issues bearing upon subject matter jurisdiction in the context of a Rule 12(b)(1) motion unless 'the jurisdictional issue and substantive issues are so intermeshed that the question of jurisdiction is dependent on the decision of the merits.'" *Kingman Reef Atoll Invs., L.L.C.*, 541 F.3d at 1196–97 (quoting *Thornhill Publ'g Co. v. Gen Tel. & Elecs. Corp.*, 594 F.2d 730, 735 (9th Cir. 1979)). "Where the questions are so intermeshed, dismissal is improper."

*Wilkins*, 13 F.4th at 796 (cleaned up).

Because determining whether there was notice of an adverse claim is not dependent on the adverse claim being valid, these questions are not intermeshed. *Id.*; *Kingman Reef Atoll Investments, L.L.C.*, 541 F.3d at 1197. There may be overlap between the two questions, but that does not make the jurisdictional question dependent on the merits. *Wilkins*, 13 F.4th at 796.

### 5. Summary of Statute of Limitations Issue

In conclusion, the statute of limitations is a jurisdictional issue. As such, a motion to dismiss under Rule 12(b)(1) is appropriate, and evidence beyond the pleadings is permissible for the Court to determine whether the statute of limitations bars this claim. The Tribes' argument that only Congress could give notice fails because foreclosure of title claims under the statute of limitations is not equivalent to diminishment. Therefore, the Court reviewed the facts presented by each party to determine when a reasonable person would have had notice of the Government's adverse claim. On that issue, the Court finds that a reasonable person would have had notice by at least 2004, which is beyond the statute of limitations. Therefore, because the statute of limitations bars the QTA claims regarding the City Creek Trail and the 3.27 Acres, the Court GRANTS the Motion as to Counts V and VI.

### D. Mandamus

Count VII of the Tribes' Amended Complaint asks the Court for a writ of mandamus ordering the following:

1. The BIA and United States immediately approve the Tribes' litigation

assistance request regarding related claims in this civil action;

2. The BIA immediately record in the Land Titles and Records Office the Tribes' interest in the two parcels relinquished in 1964 and 1989, and the three parcels sold or leased known as the Parking Lot, Bus Depot Building, and Credit Union Building;

3. The BIA take action to enforce trespass regulations against any non-railroad uses of right of way lands granted under the Acts of 1882 and 1888;

4. The BIA take action to cancel UPR's right of way for any non-railroad use parcels of right of way lands;

5. The BLM immediately transfer the parcel of land relinquished by UPR in 1989 from its inventory of lands to the BIA, to be held in trust for the Tribes; and

6. The BLM conduct a survey of all right of way lands granted under the Act of 1882 and the Act of 1888 to ascertain whether there are any non-railroad uses of right of way lands.

Dkt. 21, at ¶ 423.

District courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[T]he Supreme Court has construed a claim seeking mandamus under [28 U.S.C. § 1361], 'in essence,' as one for relief under § 706 of the APA." *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

"[M]andamus is traditionally proper only to command an official to perform an act which is a positive command and so plainly prescribed as to be free from doubt. The claim must be clear and certain and the duty of the officer ministerial." *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir. 1976). And "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). This limitation "rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of

course, agency regulations that have the force of law.)" *Norton*, 542 U.S. at 65.

The Tribes believe there is a different applicable standard, what is commonly referred to as the "TRAC test" or the "TRAC factors."[7] This test was first articulated by *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). The Government counters that this test is entirely inapplicable since it is used for unreasonable delay claims. Indeed, the factors all revolve around the delay and the timing of the required activities:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80 (cleaned up).

The Tribes do not bring an unreasonable delay claim here, and even if they did, they would still need to point to a required action. "§ 706(1) also authorizes courts to 'compel agency action . . . unreasonably delayed'—but a delay cannot be unreasonable with respect to action that is not required." *Norton*, 542 U.S. at 63 n.1.

---

[7] The Tribes also offer another standard that allows for writs of mandamus to be issued for more discretionary actions. The Tribes argue that writs can be issued if there is an abuse of discretion or if the agency action or inaction was arbitrary and capricious. For this, the Tribes rely solely on *NAACP v. Levi*, 418 F. Supp. 1109 (D.D.C. 1976). "However, the *Levi* case . . . is no longer viable precedent." *Zeiny v. Johnson*, 2014 WL 718667, at *3 (N.D. Cal. Feb. 24, 2014).

MEMORANDUM DECISION AND ORDER - 20

None of the actions the Tribes want mandated are plainly prescribed by the law. In response, the Tribes argue the mandates are in the 1888 Act and 25 C.F.R. §§ 169.401, 169.402.[8] But both § 169.401 and § 169.402 use discretionary language: "*may* result in enforcement actions," "BIA *may* investigate," and "[w]e *may* enter." 25 C.F.R. §§ 169.401, 169.402 (emphases added). And while § 169.402(a)(1) does say that upon notice "that a specific abandonment, non-use, or violation has occurred, we *will* promptly initiate an appropriate investigation," 25 C.F.R. § 169.402(a)(1) (emphasis added), the Tribes do not seek a writ of mandamus requiring such an investigation.

Furthermore, "'agency refusals to institute investigative or enforcement proceedings' are presumed immune from judicial review under 5 U.S.C. § 701(a)(2)." *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1481 (D.C. Cir. 1995) (quoting *Heckler v. Chaney*, 470 U.S. 821, 838 (1985)). Similarly, the Attorney General's litigation decisions, including whether to act on the behalf of tribes, is "presumptively immune from judicial review." *Id.* at 1480. Finally, the 1888 Act does not plainly prescribe any of the six actions the Tribe wants the Court to mandate.

Accordingly, the Tribes have failed to state a claim in Count VII for a writ of mandamus, so the Court GRANTS the Motion to Dismiss as to Count VII.

### E.  Breach of Trust—Count IX

Count IX is a claim against the BIA for breach of trust, alleging that there was an obligation to enforce trespass actions. Dkt. 21, at ¶¶ 438–43. The Government argues that

---

[8] In their Complaint, the Tribes point to whole parts in the C.F.R. that also lay out mandatory duties, but they do not point to any specific provision or duty. *See* Dkt. 21, at ¶ 424.

this is not a viable claim under the Administrative Procedure Act ("APA") for three reasons: (1) the Tribes are seeking money damages; (2) there is another adequate remedy; and (3) Count IX does not identify a final agency action reviewable by the Court. Because the Court agrees that Count IX does not identify a final agency action reviewable under the APA, the Court declines to address the Government's other two arguments.

Under the APA, judicial review is limited to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The reason the APA limits judicial review to "final agency action" is to permit the agency "'an opportunity to correct its own mistakes and to apply its expertise' and prevents 'piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.'" *Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*, 740 F.2d 21, 30 (D.C. Cir. 1984) (quoting *FTC v. Standard Oil Co. of Cal.*, 4999 U.S. 232, 242 (1980)). There are two requirements for an agency action to be final: (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). Additionally, the applicable statute of limitations is six years. 28 U.S.C. § 2401(a); *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 438 F.3d 937, 942–43 (9th Cir. 2006) ("Although the APA itself contains no specific statute of limitations, a general six-year civil action statute of limitation applies to challenges under the APA.").

Count IX of the Amended Complaint does not reference specific final agency

actions, but the Tribes' brief does point to certain exhibits filed with their Amended Complaint that "all describe the trespassory nature of non-railroad uses and the Tribes' right of occupancy." Dkt. 91, at 30. The Tribes do not explain in their brief how these actions are "final agency actions," relying instead on the conclusory allegation that they simply are.

Each of the Tribes' exhibits fails to represent a final agency action that is reviewable given the statute of limitations. Below is a brief discussion of each exhibit:

**Exhibit 9 (Dkt. 22-6)** – This is the 2005 BIA Reversion Letter. The statute of limitations bars any claim reliant on final agency action in 2005, more than six years before the inception of this case on June 26, 2018. Because this letter is internal, it cannot be viewed as final agency action since it is not the consummation of agency decision-making.

**Exhibit 14 (Dkt. 22-8)** – This is a letter from 1965 accepting the partial relinquishment of land from the railroad companies. This agency action also is unreviewable by the Court because of the statute of limitations.[9]

**Exhibit 24 (Dkt. 22-11)** – This is a January 2012 letter from the BIA to the Union Pacific Railroad Company regarding the reversionary interest. This too is beyond the statute of limitations, though only by months. Furthermore, this is not a final agency action. Under 25 C.F.R. § 169.404(b), when a grantee violates a right-of-way grant, as is alleged here, then the BIA will notify the grantee, who will then have an opportunity to respond and dispute the charge. Here, the Union Pacific Railroad Company did just that. *See* Dkt.

---

[9] The Government concedes that this may be a final agency action, but it is unreviewable because of the statute of limitations.

77-5. Thus, this letter was not a final agency action.

**Exhibits 25–30 (Dkts. 22-11, 22-12, 22-13)** – Each is an internal memorandum—the most recent from 1997. Thus, it neither survives the statute of limitations nor is it a final agency action.

**Exhibit 31 (Dkt. 22-13)** – This is a 1999 letter from the Department of Interior to the Union Pacific Railroad Company. It is beyond the statute of limitations. Moreover, it is not final agency action since it asks for follow-up information and corrective action.

**Exhibit 39 (Dkt. 22-17)** – This is a 2008 decision letter. While the Government concedes it is a final agency action, it is barred by the statute of limitations. Moreover, it concerns a land parcel not in issue in this case.

**Exhibit 42 (Dkt. 22-18)** – This is a 2016 email from the BLM public affairs office. While this is not time barred, it is also not a final agency action. It says explicitly that the area would remain open to the public "while further reviews occur," regarding signs placed on one of the parcels "relating to the Tribes' assertion of ownership."

The Tribes' brief also references a 2014 BLM statement. Dkt. 91, at 30. In the Complaint, the Tribes allege that "[o]n June 10, 2014, the BLM issued a formal Decision letter accepting the partial relinquishment of the right of way connected with parts of the lands subject to this action." Dkt. 21 at ¶ 283. That acceptance is arguably a final agency action.[10] However, it is the action of the BLM rather than the BIA, and the Tribes are

---

[10] Referring to another document accepting relinquishment, the Government concedes that it "arguably meet[s] the standard" for a final agency action. Dkt. 94, at 16. That document, however, predated the six-year statute of limitations, and for that reason, the Government argued it was unreviewable. *Id.* By contrast, the 2014 decision letter is within the statute of limitations and thus is reviewable if it is a final agency action.

bringing this claim against the BIA. The premise of this claim is that the BIA was aware of the relinquishment and was not acting to protect the Tribes' interest in this land—thereby breaching its trust obligations. *Id.* at ¶¶ 438–43. Thus, it is the inaction of BIA that the Tribes are challenging.

This claim suffers from the same flaw as the mandamus claim—APA claims for agency inaction "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. To be sure, the Tribes argue the BIA is required by its trust obligations to act on behalf of the Tribes to claim the relinquished land, and they allege in the Complaint that the BIA has violated a "specific statutory duty" under 25 C.F.R. Part 169 by failing to bring and enforce trespass actions. Dkt. 21, at ¶¶ 438–43. However, as explained earlier, 25 C.F.R. Part 169 does not require discrete actions but rather gives the agency discretion to manage rights-of-way over Indian land.

This claim is akin to the one brought in *Gros Ventre Tribe v. United States*, 469 F.3d 801 (9th Cir. 2006). There, the Plaintiff tribes argued that "the government breached its common law trust obligations by failing to take action that it was legally required to take, or by acting in a fashion that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at 806. In that case, the Ninth Circuit observed that the theory "conflat[ed] general trust law principles with an attack on agency inaction under the Administrative Procedure Act." *Id.* at 803. Relying on *Norton*, the Ninth Circuit concluded that "[e]ven assuming the government has a common law trust obligation that can be tied to its statutorily mandated duties under [the statute], the Tribes have no basis for arguing

that these obligations require the government to take discrete nondiscretionary actions." *Id.* at 814 (citing *Norton*, 542 U.S. at 64, 66).

Because the Tribes do not allege a reviewable final agency action of the BIA, the Court GRANTS the Motion as to Count IX, and this claim is dismissed for lack of jurisdiction. *See id.* at 814 (affirming the district court's dismissal of a breach of trust claim for lack of jurisdiction).

### F. Ejectment and Restitution—Count XVI

Count XVI is a claim for ejectment and restitution. The Government argues challenges against the United States's title to real property must be brought under the Quiet Title Act. Otherwise, the United States has not waived sovereign immunity.

"The Quiet Title Act is the exclusive means by which adverse claimants can challenge the United States' title to real property." *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999) (cleaned up). Because of sovereign immunity, the Court does not have jurisdiction over a dispute about the United States's interest in property unless the Quiet Title Act applies. *Id.*

However, the Tribes argue that this is not an action against the United States but rather against individual officers on the theory that they "acted beyond their statutory and constitutional powers." Dkt. 91, at 31. In the Complaint, Count XVI is framed as a claim against the "UPR, BLM, City of Pocatello, Subject Lands." Dkt. 21, at 72. The BLM is not a named defendant, but rather, *officers* of the BLM are named defendants. Dkt. 21, at 1.

Assumedly, this claim is brought against those named officers.[11] The Complaint alleges that the "individual government officer Defendants . . . acted outside the scope of their authority." Dkt. 21, at ¶ 19. This is because they took the United States's property belonging to the Tribes without just compensation—a violation of the Takings Clause. *Id.* at ¶ 104; Dkt 91, at 31.

The Government argues that this is all smoke and mirrors. In the Government's view, this is not an officer suit.

Officer suits for ejectment claims go back to *United States v. Lee*, 106 U.S. 196 (1882). Explaining *Lee* and other decisions about sovereign immunity and ejectment actions, the Supreme Court in *Malone v. Bowdoin*, 369 U.S. 643 (1962), laid out the following rule:

> [T]he action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.

*Id.* at 647. However, "bare allegations [of unconstitutional conduct] cannot lift the jurisdictional bar if the action is, in actuality, one to quiet title against the United States." *Ritter v. Morton*, 513 F.2d 942, 945 (9th Cir. 1975), *cert. denied*, 423 U.S. 947 (1975).

In *Ritter*, the Ninth Circuit explained that if the plaintiff holds apparent title to the property, then it is an officer suit and sovereign immunity does not apply; but if the United

---

[11] The Tribes' brief on this issue says it brings claims against John Tahsuda III, Twyla Stange, Randy Thompson, Brian Steed, Michael D. Nedd, and Peter Ditton. Dkt. 91, at 31. However, only Steed, Nedd, and Ditton are BLM officers. Because the BLM is the only Government office Count XVI applies to, there is no claim for ejectment brought against Tahsuda, Stange, or Thompson.

States holds apparent title, then it is a suit against the United States and sovereign immunity applies. *Id.* at 946; *see also McClellan v. Kimball*, 623 F.2d 83, 84 (9th Cir. 1980) ("In *Ritter*, we stated that, in an action against a federal officer in which title to property is disputed, the district court must first determine who held 'apparent' title to the property.").

Of course, this means a determination of where "apparent title rest[s]" is necessary first. *Ritter*, 513 F.2d at 946. "[I]n title dispute cases the issue of sovereign immunity and the ultimate merits of a plaintiff's claim are intimately interconnected. For all practical purposes, the former cannot be resolved without determining the latter." *Id.* Thus, it would be premature to dismiss this claim now on grounds of sovereign immunity before determining where apparent title rests. Therefore, the Court DENIES the Motion as to Count XVI.

## V. CONCLUSION

In summary, the Court GRANTS IN PART and DENIES IN PART the Government's Renewed Motion to Dismiss. Dkt. 77. It DENIES the Motion as to Counts I, II, III, IV, and XVI. And it GRANTS the Government's Motion as to Counts V, VI, VII, and IX. The Court thus DISMISSES WITHOUT PREJUDICE Counts V, VI, VII, and IX as they pertain to the Government defendants and Count V as it pertains to the City of Pocatello as well.

## VI. ORDER

THE COURT HEREBY ORDERS:

1. The Government's Renewed Motion to Dismiss (Dkt. 77) is GRANTED IN PART and DENIED IN PART.

MEMORANDUM DECISION AND ORDER - 28

2. The Government's Motion is GRANTED on Counts V, VI, VII, and IX.

3. Counts V, VI, VII, and IX in the Amended Complaint (Dkt. 21) are DISMISSED WITHOUT PREJUDICE as alleged against the Government defendants.

4. Count V in the Amended Complaint (Dkt. 21) is DISMISSED WITHOUT PREJUDICE as alleged against the City of Pocatello.

5. The Government's Motion is DENIED on Counts I, II, III, IV, and XVI, and those claims are not dismissed.

6. The Court will issue a Litigation Order as soon as reasonably practicable.

DATED: December 16, 2021

David C. Nye
Chief U.S. District Court Judge