UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION,<br><br>        Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>        Defendants. | Case No. 4:18-cv-00285-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is the Shoshone-Bannock Tribes of the Fort Hall Reservation's Motion for Permission to Appeal (Dkt. 127) and Second Motion to Reconsider (Dkt. 131). The Court heard oral argument on the motions on January 17, 2024. For the reasons set forth below, the Court denies the Tribes' Motion for Permission to Appeal and grants in part and denies in part the Tribes' Second Motion to Reconsider.

# II. BACKGROUND

The Court has already explained the background of this case and incorporates that explanation by reference. (*See* Dkt. 102 at pp. 1-3; Dkt. 112 at pp. 2-3; Dkt. 126 at pp. 1-2). The Court, however, provides a brief summary of the background and procedural developments applicable to the pending motions in this case.

In the late nineteenth century, Congress ratified a series of treaties giving railroad companies an easement over lands belonging to the Shoshone-Bannock Tribes of the Fort Hall Reservation ("the Tribes") and giving the Tribes a reversionary interest in those lands. (Dkt. 102 at pp. 1-2). The Tribes allege that the lands are no longer being used for railway purposes, so they have sued several defendants, including the United States, the City of Pocatello, and the Union Pacific Railroad Company, to recover the lands. (Dkt. 21 at pp. 2-3).

In 2020, the United States moved to dismiss all the Tribes' claims. (Dkt. 77 at p. 2). Addressing this motion, the Court dismissed four of the Tribes' claims: Counts V, VI, VII, and IX. (Dkt. 102 at p. 29). Thereafter, the United States filed a motion for clarification or, in the

alternative, for partial reconsideration. (Dkt. 108). Based on this motion, the Court dismissed Count XVI. (Dkt. 112 at p. 7). The Tribes moved to reconsider both decisions, arguing none of the counts should have been dismissed. (*See* Dkt. 114). In March 2023, the Court partially granted the motion and allowed the Tribes to pursue Count XVI against the City of Pocatello. (Dkt. 126 at pp. 16-18). Thereafter, the Tribes moved for permission to appeal (Dkt. 127) and filed a second motion for reconsideration.[1] (Dkt. 131).

### III. LEGAL STANDARD

#### A.  Permission to Appeal

"Under 28 U.S.C. § 1292(b) parties may take an interlocutory appeal when 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). This is a narrow exception to the final judgment rule, and the party pursuing the interlocutory appeal bears the burden of demonstrating the certification requirements of § 1292(b) are met. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Under § 1292(b), the movant must prove (1) the order involves a controlling question of law, (2) there is a substantial ground for difference of opinion concerning the issue, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *City of San Diego v. Monsanto Co.*, 310 F. Supp. 3d 1057, 1065 (S.D. Cal. 2018).

When the movant discharges his burden of proving the three conditions of § 1292(b), the district court has discretion to allow the appeal or not. *See, e.g.*, *Villareal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1068 (D. Ariz. 2015) ("The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court."). "The precedent in this circuit has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases," however. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981) (cleaned up); *see also Pac. Union Conference of Seventh-Day Adventists v. Marshall*, 434 U.S.

---

[1]  This case was reassigned to the undersigned judge in June 2023.

**MEMORANDUM DECISION AND ORDER - 2**

1305, 1309 (1977) (citation omitted) ("The policy against piecemeal interlocutory review other than as provided for by statutory authorized appeals is a strong one.").

### B. Motion to Reconsider

Under Federal Rule of Civil Procedure 54(b), any interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." This rule makes explicit the district court's "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). "However, although a court has the power to revisit its own decision for any reason, as a rule the court should be loathe to do so in the absence of extraordinary circumstances such as whether the initial decision was clearly erroneous and would work a manifest injustice." *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2020 WL 2841517, at *10 (D. Idaho June 1, 2020) (citation omitted). Therefore, although the power to modify interlocutory orders is not subject to the limitations of Federal Rule of Civil Procedure 59, which provides for modification of final orders, "district courts deciding a 54(b) motion are frequently guided by substantially the same standards as those used to reconsider final orders pursuant to Rule 59(e)." *Dickinson*, 2020 WL 2841517, at *24.

"[Rule 59(e)] offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). Therefore, "[u]nder Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (cleaned up). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id*. The movant bears the burden of establishing the existence of such a circumstance. *See, e.g.*, *United States v. Wetlands Water Dist.*, 134 F. Supp. 2d 1111, 1130-31 (E.D. Cal. 2001).

Rule 59(e) permits a court to alter or amend a judgment, but it may not be used relitigate old matters, or to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5

(2008). The district court has discretion to deny a motion for reconsideration on the grounds that the movant's arguments could have been presented before. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (affirming district court's denial of motion for reconsideration).

## IV. DISCUSSION

### A. Tribes' Second Motion to Reconsider

#### 1. Counts V & VI under QTA

The Tribes argue that the Supreme Court's holding in *Wilkins v. United States*, 598 U.S. 152 (2023), renders clearly erroneous the Court's decision to dismiss Counts V and VI, both of which are claims under the Quiet Title Act, 28 U.S.C. § 2409a. (Dkt. 21 at pp. 55, 58; Dkt. 131, at pp. 2-4). The United States agrees. (Dkt. 134 at p. 5) ("We agree that, in light of the Supreme Court's decision in *Wilkins*, the Court should reverse its dismissal of Counts V and VI under Rule 12(b)(1)."). The Court, likewise, agrees that its dismissal of Counts V and VI should be reversed based on *Wilkins*.

The Court originally dismissed Counts V and VI for lack of subject-matter jurisdiction, relying on the Ninth Circuit's interpretation of *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273 (1983), holding the QTA's statute of limitations under 28 U.S.C. § 2409a(g) was jurisdictional. (Dkt. 102 at p. 12). At the time, the Court was bound by that Ninth Circuit precedent. Subsequently, the Supreme Court held in *Wilkins* that "Section 2409a(g) is a non-jurisdictional claims-processing rule." *Wilkins*, 598 U.S. at 165. This holding reversed the precedent the Court relied on in its December 2021 decision and renders the dismissal of Counts V and VI clearly erroneous. Accordingly, the Court grants the Tribes' motion to reconsider and reverses its dismissal of Counts V and VI.

Further, the Court will not apply the law of the case doctrine to its prior factual findings regarding jurisdiction. For purposes of resolving Defendants' motion to dismiss Counts V and VI for lack of jurisdiction, the Court considered evidence outside the Tribes' Amended Complaint to determine whether the QTA's twelve-year statute of limitations barred Counts V and VI. (Dkt. 102 at p. 18). Because § 2409a(g) is non-jurisdictional under *Wilkins*, however, the Court's reliance on information outside the Amended Complaint to make jurisdictional factual findings was unnecessary. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). As the case progresses and develops, the Court will apply the applicable legal standard for determining issues arising in other

MEMORANDUM DECISION AND ORDER - 4

procedural postures.  *Cf. Rhodes v. Robinson*, 399 F. App'x 160 (9th Cir. 2010) (noting law of case doctrine does not apply if case is in different procedural posture).

### 2. Count XVI for Ejectment

The Tribes also assert the Court erred in dismissing Count XVI for ejectment against the United States, arguing the Court applied *Block*, 461 U.S. 273, too broadly.  The history of Count XVI is convoluted.  In their amended complaint, the Tribes named the Director of the Bureau of Land Management, the Deputy Director, and the Idaho State Director as defendants.  Against the BLM, the Tribes alleged Count XVI for ejectment and restitution of various properties in which the Tribes allege they are "beneficial owners."

Addressing the United States' motion to dismiss Count XVI, the Court noted the Tribes acknowledged Count XVI against the BLM was a claim against "individual officers" allegedly "acted beyond their statutory and constitutional powers" (Dkt. 102 at p. 26) (quoting Dkt. 91 at p. 31), and it denied the United States' motion to dismiss the claim.  (Dkt. 102 at p. 28).  Later, addressing the United States' motion for clarification of this denial, the Court noted Count XVI was "stylized as an officer suit" and concluded that the QTA preempted the claim against the BLM officers.  (Dkt. 112 at pp. 4-6).  In support, the Court relied on *Block*.  (Dkt. 112 at pp. 4-6).  Then, addressing the Tribes' motion for reconsideration, the Court ruled it committed clear error in dismissing the Tribes' ejectment claim against Pocatello and "revise[d] its dismissal of Count XVI accordingly."[2]

Now, in the Tribes' pending second motion for reconsideration, the Tribes argue that, because the dismissal of Count XVI was "founded on reversed legal authority, it is axiomatic the ejectment claims dismissals also be reversed."  (Dkt. 131 at p. 5).  In support, the Tribes argue "*Block* only stands for the proposition that if someone does not succeed under the QTA, they can

---

[2]    The Court did not mention the Union Pacific Railroad against whom the Tribes also allege Count XVI.  Because the UPR did not move to dismiss this claim, the claim remains against UPR.

**MEMORANDUM DECISION AND ORDER - 5**

not [sic] do an end run around it through an ejectment claim without another independent source of waiver of sovereign immunity."³ (Dkt. 136 at p. 3).

The Court disagrees with the Tribes' characterization of *Block*. In *Block*, the Supreme Court addressed two issues: whether the QTA's twelve-year statute of limitation under § 2409a(f) applies to an action by a state and whether "Congress intended the QTA to provide the exclusive procedure by which a claimant can judicially challenge the title of the United States to real property." *Block*, 461 U.S. at 276-77. In considering the latter issue, the Court held the QTA was the exclusive procedure and rejected "an officer's-suit theory" as an exception to the QTA. *Id.* at 285. For this reason, the QTA also excludes ejectment claims against the Government. *See, e.g.*, *Thoerner v. United States*, 2015 WL 6755207, at *3 (D. Alaska Nov. 4, 2015) (noting QTA encompasses ejectment); *McClellan v. Kimball*, 623 F.2d 83, 85-86 (9th Cir. 1980) (discussing dismissal of ejectment claim in QTA case).

After *Block*, the Supreme Court in *Wilkins* considered whether § 2409a(f) was jurisdictional. *Wilkins*, 598 U.S. at 158-59. In doing so, the Court concluded "*Block* never stated [the QTA's] time limit was . . . truly a limit on subject-matter jurisdiction." *Id.* at 161. The Supreme Court in *Wilkins*, however, did not overrule the holdings in *Block*, including that the QTA provides the exclusive procedure to challenge the United States' title to real property. The Tribes' characterization of *Block* as "reversed legal authority" is incorrect. (Dkt. 131 at p. 5). Accordingly, the Court denies the Tribes' motion to reconsider the dismissal of Count XVI, their ejectment claim, against the BLM.

---

³ The Tribes also argue in their reply brief that the "Bad Men" provision of the Fort Bridger Treaty of July 3, 1868, and 25 C.F.R. 169.413 provide alternative grounds to assert their ejectment claims against the federal Defendants. (Dkt. 136). The Court will not entertain these arguments. The Tribes raised these arguments for the first time in the Tribes' reply brief, leaving the United States with no opportunity to respond. *United States v. Boyce*, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001) ("[I]t is improper for a party to raise a new argument in a reply brief."); *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992). Additionally, the Tribes could have made these arguments before filing their *second* motion to reconsider. *See Am. Rivers v. NOAA Fisheries*, 2006 WL 1983178, at *2 (D. Or. July 14, 2006) (citation omitted) ("Motions for reconsideration . . . may not be used to present new arguments or evidence that could have been raised earlier.").

**MEMORANDUM DECISION AND ORDER - 6**

### B. Permission to Appeal

In their Motion for Permission to Appeal, the Tribes request the Court certify three of its decisions for interlocutory appeal including: (1) the December 2021 decision (Dkt. 102), addressing the United States' motion to dismiss; (2) the May 2022 decision (Dkt. 112), addressing the United States' motion for clarification; and (3) the March 2023 decision (Dkt. 126), addressing the Tribes' first motion to reconsider.

In support, the Tribes identify seven issues they argue meet the standard for permissive appeal under 28 U.S.C. § 1292(b). (Dkt. 129). Although the Tribes do not clearly identify to what particular claim their alleged issues for permissive appeal relate, many appear to relate directly to the Court's prior dismissal of the Tribes' QTA claims, Counts V and VI. Given that the Court is reinstating those claims, the related issues are mooted. Moreover, the Court finds that the Tribes' somewhat cryptic motion fails to meet their burden to show that each issue involves a controlling question of law for which a substantial ground for difference of opinion exists and that an immediate appeal will materially advance the litigation. *See* 28 U.S.C. § 1292(b) (identifying criteria for permissive appeal). Accordingly, the Court denies the Tribes' motion for permissive appeal.

### V. ORDER

1. The Tribes' Motion for Permission to Appeal (Dkt. 127) is **DENIED**.
2. The Tribes' Second Motion to Reconsider (Dkt. 131) is **GRANTED** with respect to Counts V and VI and **DENIED** with respect to Count XVI. Counts V and VI against the United States are reinstated.

DATED: January 22, 2024

Amanda K. Brailsford
U.S. District Court Judge